DECISION
{¶ 1} Relator, Dian M. Burbol, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to grant her statutory permanent total disability compensation pursuant to R.C. 4123.58(C).
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the record, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's decision, relator's requested writ of mandamus is denied.
Writ of mandamus denied.
French and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Dian M. Burbol,:
 Relator, :
v. : No. 04AP-1110
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Cascade of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 29, 2005 James H. French, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
In Mandamus
 {¶ 4} Relator, Dian M. Burbol, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to grant her statutory permanent total disability ("PTD") compensation, pursuant to R.C. 4123.58(C) and Ohio Adm. Code 4121-3-34(E).
Findings of Fact:
 {¶ 5} 1. Relator sustained two work-related injuries and her claims have been allowed for: "contusion right hand; tendonitis right hand and wrist; reflex sympathetic dystrophy right upper extremity" and "joint derangement nec — hand, left thumb."
 {¶ 6} 2. On August 22, 2003, relator filed an application for PTD compensation. In support thereof, relator submitted the treatment notes of her treating physician N. Rehmatullah, M.D., from March 5, 2001 through November 24, 2003. In his treatment notes, dated May 1, 2003, Dr. Rehmatullah stated as follows:
* * * I had filled out a paper on 04-10-03 indicating that she had reached MMI. This is based on the fact that she had had extended conservative care, including pain management, and her condition has not changed. I therefore feel that she has reached a treatment plateau, at which no fundamental functional or physical change can be expected, despite continuing medical or rehabilitative intervention. With regards to her work capacity, she is not able to work because of limited use of her right arm and hand.
 {¶ 7} 3. The commission referred relator to R. Scott Krupkin, M.D., for an independent medical examination. Dr. Krupkin issued a report, dated December 11, 2003, wherein he noted the following on physical examination:
* * * Examination of the right upper extremity shows that the patient holds her arm in a guarded and flexed posture. At this point she demonstrated no active movement in the right upper extremity. Attempts to passively move the limb were virtually impossible due to muscle tightness and/or contractures. She is able to extend and flex her index finger and thumb with a weak pincer grasp. There is hyperesthesia at the dorsum of the first web space. Otherwise, light touch sensation is apparently absent in the rest of the right upper limb per patient report. The right upper extremity is warm, there is no discoloration or trophic skin changes. Capillary refill is normal. Distal pulses are intact. Deep tendon reflexes could not be tested secondary to contractures of the arm. Palpatory examination revealed tenderness through the cervical paraspinals, scalenes and proximal scapular stabilizers. * * *
 {¶ 8} Dr. Krupkin concluded that relator had reached maximum medical improvement ("MMI") and assessed a 60 percent whole person impairment relative to her upper right extremity conditions. Dr. Krupkin further opined as follows: "Because the right upper extremity appears to be completely dysfunctional, this would be equivalent to amputation of the whole right arm."
 {¶ 9} 4. Relator was also evaluated by Karl V. Metz, M.D., who issued a report dated March 26, 2003. Dr. Metz noted the following on physical examination:
* * * Examination of the right upper extremity was in part compromised because of her inability to either actively or passively range the right upper extremity because of pain. She maintained the right upper extremity in a `sling position' with elbow flexed to 90 degrees to the side, the wrist flexed and the middle, ring, and little fingers flexed into the palm. She had no difficulty with motor activities of the thumb and index fingers.
* * * [S]he was able to actively flex and extend the right elbow and right wrist. Range of motion right shoulder: flexion, extension and abduction were 50 degrees. Range of motion right elbow: flexion 125 degrees with a 40 degree lack of full extension; supination/pronation of the right wrist were actively to 90 degrees. Range of motion right wrist: extension 55 degrees, flexion 35 degrees; radial deviation 20 degrees ulnar deviation 20 degrees. * * *
* * * Reflexes in the upper extremity were graded at trace to 1+ but were equal from right to left. On sensory testing claimant was considered to have intact sensation in all digits of the right hand as well as the extremity from the shoulder to the wrist region. Motor testing was considered invalid because of both posturing and guarding of the right upper extremity. * * *
 {¶ 10} Dr. Metz opined that relator had reached MMI and recommended, in addition to vocational rehabilitation, that relator receive a psychiatric evaluation based on inconsistencies he noted which, in his opinion, were inconsistent with the diagnosis of reflex sympathetic dystrophy. He noted further that there were no contractures of any of the joints of her middle, ring, or little fingers and that there was no atrophy of her right upper extremity which, he indicated, would be effected after two years and two months from the time of the industrial injury based upon the diagnosis. Dr. Metz filled out an occupational physical capacities form indicating that: relator could sit, stand, and walk for up to three hours at a time; could sit for a total of seven hours in an eight hour day, stand and walk for up to six hours in an eight hour day; with regards to her right upper extremity, Dr. Metz opined that relator could neither lift nor carry between zero to five pounds; and could occasionally bend and squat, but was precluded from crawling, climbing and reaching. Dr. Metz further precluded, with regard to relator's right upper extremity, from activities involving heights, being around moving machinery, and driving automotive equipment; relator could not perform simple grasping, pushing and pulling of arm controls, or fine manipulation relative to her right upper extremity.
 {¶ 11} 5. An employability assessment report was prepared by James H. Houck, dated January 20, 2004. Based upon the May 1, 2003 report of Dr. Rehmatullah, Houck concluded that relator was not capable of sustained remunerative employment. However, based upon the reports of both Drs. Krupkin and Metz, Houck opined that relator could perform the following jobs immediately: "Stuffer; Table Worker; Taxicab Starter; Dispatcher, Street Department; Checker II; Grinding-Machine Operator, Automatic; Sorter." Houck concluded that relator's age would not be a barrier to reemployment, that her 12th grade education would not be a barrier to her reemployment, that her work history of semi-skilled work would not be a barrier to her reemployment, and that there was nothing in the record to indicate that she would not benefit from a structured vocational rehabilitation program.
 {¶ 12} 6. Daniel L. Simone, M.Ed., completed a labor market access report dated February 16, 2004. Simone concluded that Dr. Krupkin's indication that relator has no functional use of her upper right extremity would significantly erode the occupational base at even sedentary work because approximately 99 percent of all unskilled occupations require the ability to repetitively grasp and handle objects with the dominant upper extremity. Simone opined that the few jobs claimant could perform exist in such restrictive numbers that they would not provide a realistic vocational goal. He concluded that relator had experienced a total inability to perform substantial gainful employment.
 {¶ 13} 7. The matter was heard before a staff hearing officer ("SHO") on March 31, 2004, and resulted in an order denying relator's application for PTD compensation. The SHO relied upon the medical report of Dr. Krupkin and the vocational report of Houck. Furthermore, the SHO provided the following vocational analysis:
As indicated before, the Staff Hearing Officer finds that the claimant's age is a positive factor as the claimant's age of 42 leaves approximately 20 plus years of working life ahead of her.
The Staff Hearing Officer finds that the claimant's education is also a positive factor. The claimant's high school-plus education, as claimant completed training in order to be a certified nurse's aide, an occupation claimant performed for the bulk of her working career, may not necessarily provide claimant with present time skills but is evidence of claimant's ability to learn new skills and is more than adequate for the claimant to meet the basic demands of a number of entry-level jobs and is consistent with the ability to perform and/or learn some skilled as well as unskilled work on a sedentary basis.
Finally, the claimant's work history is also a positive factor. The claimant, working the bulk of her working career as a nurse's aide, a position which requires training as well as certification, indicates employment which can be classified as semi-skilled work which indicates and suggests that the claimant has the skills and qualifications to perform other entry level occupations based on prior high school-plus education and semi-skilled work history.
Therefore, based upon the limited physical restrictions by Dr. Krupkin, who indicates that the claimant can perform sedentary work, along with claimant's semi-skilled work history, age, with approximately 20 plus years of working life ahead of her, as well as high school-plus education, the Staff Hearing Officer finds that the claimant is not permanently and totally disabled and is not precluded from all sustained remunerative employment.
 {¶ 14} 8. Relator's request for reconsideration was denied by order of the commission mailed May 29, 2004.
 {¶ 15} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 18} In this mandamus action, relator does not challenge the commission's order denying her application for PTD compensation. As such, after having reviewed that order, the magistrate finds that it meets the requirements of the law as the SHO cited the evidence upon which it relied and provided an adequate explanation as required byNoll.
 {¶ 19} Relator challenges the commission's order in the following respects: relator contends that the evidence shows that she has lost the use of her right arm to the same extent as if it has been amputated, thereby qualifying her for an award of statutory PTD compensation pursuant to R.C. 4123.58(C). Furthermore, relator contends that pursuant to R.C. 4123.58(C) and Ohio Adm. Code 4121-3-34(E), the commission was required to make an award of statutory PTD compensation at the May 31, 2004 hearing. For the reasons that follow, this magistrate disagrees.
 {¶ 20} R.C. 4123.58(C) provides, as follows:
The loss of loss of use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, constitutes total and permanent disability, to be compensated according to this section. Compensation payable under this section for permanent total disability is in addition to benefits payable under division (B) of section 4123.57 of the Revised Code.
 {¶ 21} Supplementing R.C. 4123.58 is Ohio Adm. Code 4121-3-34, to which relator refers, which provides, in pertinent part, as follows:
(E) Statutory permanent total disability
Division (C) of section 4123.58 of the Revised Code provides that the loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or any two thereof, constitutes total and permanent disability.
(1) In all claims where the evidence on file clearly demonstrates actual physical loss, or the permanent and total loss of use occurring at the time of injury secondary to a traumatic spinal cord injury or head injury, of both hands or both arms, or both feet or both legs, or both eyes, or any two thereof, the claim shall be referred to be reviewed by a staff hearing officer of the commission. Subsequent to review, the staff hearing officer shall, without hearing, enter a tentative order finding the injured worker to be entitled to compensation for permanent and total disability under division (C) of section 4123.58 of the Revised Code. If an objection is made, the claim shall be scheduled for hearing.
(a) Within thirty days of the receipt of the tentative order adjudicating the merits of an application for compensation for permanent and total disability, a party may file a written objection to the order. * * *
(b) In the event a party makes written notification to the industrial commission of an objection within thirty days of the date of the receipt of the notice of findings of the tentative order, the application for compensation for permanent and total disability shall be set for hearing and adjudicated on its merits.
(2) In all other cases filed under division (C) of section 4123.58 of the Revised Code, if the staff hearing officer finds that the injured worker meets the definition of statutory permanent and total disability pursuant to division (C) of section 4123.58 of the Revised Code, due to the loss of use of both hands or both arms, or both feet or both legs, or both eyes, or any two thereof, the staff hearing officer, without a hearing, is to issue a tentative order finding the injured worker to be permanently and totally disabled under division (C) of section 4123.58 of the Revised Code. An objection to the tentative order may be made pursuant to paragraphs (E)(1)(a) and (E)(1)(b) of this rule.
 {¶ 22} Pursuant to State ex rel. Thomas v. Indus. Comm.,97 Ohio St.3d 37, 2002-Ohio-5306, relator contends that the evidence in the record supports a finding that she is entitled to statutory PTD compensation. While relator is incorrect to assert that the commission had the duty to grant her an award of PTD compensation at the March 31, 2004 hearing, a more reasonable interpretation of relator's complaint in mandamus would be that she asserts the commission abused its discretion by not issuing a tentative order finding that she was entitled to an award of statutory PTD compensation, and thereafter providing notice to the parties and giving the employer the opportunity to file objections. However, the magistrate finds that, in the present case, the commission did not abuse its discretion in not issuing a tentative order finding that she was entitled to that compensation. While Dr. Krupkin does make the statement that, in his opinion, relator's "right upper extremity appears to be completely dysfunctional * * * equivalent to amputation of the whole right arm," the report of Dr. Metz indicates that relator was able to actively flex and extend her right elbow and wrist, that she could flex, extend and abduct her right shoulder 50 degrees, and that the motor testing was considered invalid because of both relator's posturing and guarding of her right upper extremity. He further opined that there were inconsistencies noted which, in his opinion, were inconsistent with the diagnosis of reflex sympathetic dystrophy and he recommended that relator receive a psychiatric evaluation in this regard. As such, the magistrate finds that this is not a case where "the evidence on file clearly demonstrates actual physical loss." As such, the magistrate finds that the commission did not abuse its discretion in not automatically issuing a tentative order finding that relator was entitled to a statutory award of PTD compensation under R.C. 4123.58(C) and Ohio Adm. Code 4121-3-34(E). However, this does not preclude relator from filing an application seeking an award of statutory PTD compensation under R.C.4123.58(C). As Ohio Adm. Code 4121-3-34(E)(2) provides, once claimant files such a motion, the commission may or may not find that she meets the definition of statutory permanent and total disability and may thereafter, without a hearing, issue a tentative order making that finding. Thereafter, the employer would have the opportunity to file objections as well as medical evidence.
 {¶ 23} Based on the foregoing, this magistrate finds that the commission did not abuse its discretion in not automatically granting her an award of statutory PTD compensation pursuant to R.C. 4123.58(C) and Ohio Adm. Code 4121-3-34(E), as the evidence in the record does not clearly demonstrate that she is entitled to such an award. Furthermore, inasmuch as relator does not challenge the commission's award denying her application for PTD compensation, and because the magistrate finds that the commission's order satisfies the requirements of the law, a writ of mandamus is not warranted. As such, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.